Mr. Justice Clayton
delivered the opinion of the court.
This was an action of assumpsit against the makers and indorsers of a promissory note. The defence offered was that there was no proper demand to charge the indorser Hunt. The note was payable at the branch of the Planters Bank, in Jackson. The evidence, as to the demand, was that the notary went to the bank upon the proper day, and immediately after the close of banking hours, presented the note and demanded payment of the cashier, who replied “ that the note would not be paid, and that no funds were deposited in the bank for that purpose.” The court, at the request ofi the counsel of Hunt, charged the jury, “if they believed the bank had regular hours of doing business, and that notes payable there were by the cus *231 tom of the bank, considered dishonored, unless paid within such hours, it is not sufficient evidence of presentment and demand to charge the indorser in this case, if the note were not presented and demanded, until after the close of the banking hours.”
The rule upon this point was recently considered by this court in the case of the Commercial and Railroad Bank of Vicksburg v. Hamer, et al., Opinion Book, B. page 278. It is there stated to be, “that if a note be presented for payment at a bank at which it is payable, on the day it falls due, but after banking hours, still if the officers of the bank be in attendance, and give answer that there are no funds on deposit, and have been none during the day to pay the note, it is a sufficient demand.” Such circumstances constitute an exception to the general rule, that the demand must be made during bankmgs^@ííí^Saj«That decision we believe to be correct. Nor are *pfe.mstances which would have that effect, if tie motary receiwcjpthe same answer, and secured the same ben^ft,|which he would have done, if the demandghad been máae atfan earlier hour. In this case the court sf&uEJ|giJigij.^|;^aii#d to the jury that there were exceptions to tfi^spneral rule^sfiould have stated the nature of the exceptions, so far^i^K'e’evidence in the case pointed to any, and then have left them to apply the testimony to the law.
It is attempted, in argument, to distinguish this case from the one above cited, in this, that the answer of the cashier in this case does not as in that, negative the idea, that funds had been on deposit during the day, and before the close of banking hours, to pay the note. Here the answer was, “ that the note would not be paid, and that no funds were deposited in the bank for the purpose.” This language, “that no funds were deposited,” may refer not alone to the precise moment when the demand was made, but to the whole preceding part of the day, and it may as well express the one idea as the other. Where the testimony may admit of different and distinct constructions, it must be the province of the jury to adopt either construction which is most satisfactory to their minds. To determine otherwise, would transfer to the court the power to decide upon the weight of evidence, and the effect of testimony.
*232 As a general rule the demand must be made within banking hours, but there are certain well-settled exceptions. The plaintiff was endeavoring, by his proof, to bring himself within one of the exceptions, and a part of the evidence introduced was with a view to that end. The charge goes too far. The result might have been different, if the jury had been informed of the exception to the rule, instead of having that rule laid down as a general and inflexible proposition.
The charge of the court is, in its terms, founded upon the custom of the bank. It has express reference to the custom of considering notes as dishonored, which were not paid within ' the business hours. This custom was proven by a witness intro- ' duced by the defendant, and he stated that he did not know that j any formal demand was generally made. If this was the custom ! of the bank, the defendant in error is bound by it, just as the plain- : tiff is by the custom as to the business hours. Boston Bank v. Hodges, 9 Pick. This should likewise have been explained to' the jury, if the note were in the bank on the day it fell due.1; We think that justice and law require a new trial to be granted,; and we therefore reverse the judgment and direct it to be done. •